VARTIE *vs.* UNDERWOOD and wife and others.

A wife who joins with her husband in a mortgage of her own property, to secure his debt, or the payment of money loaned to him, is the surety, merely, of the husband, and is entitled to all the rights and privileges of a surety.

If it is shown that the debt was the debt of the husband—for money loaned to him—and that the mortgage was given to secure it, this establishes the fact that the wife was surety.

And the wife being a surety, the law presumes that the principal not only agreed to pay the debt, but to indemnify her against loss.

The fact that, by the terms of the mortgage, the surplus is to be paid to the husband, after satisfying the mortgage debt, and not to the wife, or to the mortgagors jointly, will not repel the idea that the wife was, or intended to be, a surety.

The wife's inchoate right of dower in the husband's land follows the surplus moneys, raised by a sale in virtue of the power of sale in a mortgage executed by her, with her husband, and will be protected against the claims of the husband's creditors, by directing one third of such surplus moneys to be invested, and the interest only to be paid to the creditors during the joint lives of husband and wife.

It is the right of a surety, who has pledged his property, with the property of the principal, to have the property of the principal first sold, and applied to the payment of the debt.

This principle applies, and should govern, in directing payments, after the sale of the property of both.

A mortgage was executed by husband and wife, to secure a debt of the husband upon 100 acres of land. Of the premises mortgaged, one-sixth part of 75 acres

belonged to the wife in her own right, having been acquired by her, previous to the act of 1848, to protect the property of married women. Upon a sale of the mortgaged premises, there remained, after satisfying the mortgage, surplus moneys, which were brought into court, and which were claimed by subsequent judgment creditors of the husband. *Held,* that the creditors were entitled to the interest of the money arising from the sale of the one-sixth of 75 acres, during the joint lives of the husband and wife, and the money was directed to be invested, and the interest paid over to them; unless the wife should prefer to take a gross sum, in which case a reference was directed, to ascertain the value of her interest.

*Held also,* that upon the death of the husband the right of the creditors to that portion of the fund would be at an end, and that portion should be paid over to the wife.

THIS was an appeal from a decision made at a special term, on exceptions to a referee's report. The action was to foreclose a mortgage executed by the defendants Underwood and wife to the plaintiff. Upon the sale of the mortgaged premises, in pursuance of the judgment, there were surplus moneys, after satisfying the mortgage, which were claimed by the judgment creditors of Underwood and also by Mrs. Underwood. The whole of the money arising from the sale was directed to be paid into court in the first instance, and a reference was ordered. The referee was directed to ascertain the rights and priorities of these claimants, and from what portion of the fund the mortgage ought to be satisfied. The referee subsequently reported that the bond and mortgage were executed to secure a debt of the husband Underwood, and which he alone was liable to pay. That of the premises mortgaged one-sixth part of seventy-five acres belonged to the wife in her own right, and came to her from the father; and that she joined in the bond and mortgage as the surety merely of her husband. The property became hers prior to 1848, and the judgments were all recovered against the husband subsequent to that time, and subsequent to the mortgage. On this state of facts, the referee determined that the mortgage debt should be paid and satisfied out of the entire fund, without reference to the claims of the wife. That after taking out the mortgage debt, one sixth of the remainder should be paid over to Mrs. U. in her own right, and that one third of

Vartie *v.* Underwood.

the residue should be invested to secure her contingent right of dower in the premises, and the interest only paid over to the judgment creditors during her life, giving them the residue immediately, and the dower fund at her death.  Mrs. U. filed exceptions to the report, upon the first determination, in regard to paying the mortgage, and the creditors excepted to that portion in regard to the rights of Mrs. U.  The court, at special term, overruled the exceptions taken by the creditors, and sustained that taken by Mrs. U. in part only.  The creditors appealed to the general term.  The particular questions raised will appear more fully in the opinion.

*D. B. Prosser*, for creditors.

*J. M. Bradford*, for Mrs. Underwood.

*By the Court*, JOHNSON, P. J.  The first exception taken by the creditors raises the question of the right of Mrs. Underwood, the wife of the debtor, to any portion of the surplus.

The premises mortgaged were 100 acres of land, and the referee reports that the wife was the owner in her own right of one-sixth part of seventy-five acres of the one hundred acres.

The principle that the wife, who joins with the husband, in a mortgage of her own property, to secure his debts or the payment of money loaned to him, is the surety merely of her husband, and is entitled to all the rights and privileges of a surety, is well settled by authority.  (*Neimcewicz* v. *Gahn,* 3 *Paige,* 614; *S. C.,* 11 *Wend.* 312.  *Hawley* v. *Bradford,* 9 *Paige,* 200.  *Fitch* v. *Cotheal,* 2 *Sand. Ch.* 29.  *Loomer* v. *Wheelwright,* 3 *Id.* 135.)  Numerous other cases might be cited.  It is contended, on behalf of the creditors, that it must be affirmatively shown by the wife that she did in fact unite in the mortgage as a surety for her husband, and that it was expected and agreed he should pay the debt; and that there was no such proof before the referee.

No such proof was necessary.  It was shown that the debt was the debt of the husband, and that the mortgage was given

to secure it. The money was loaned to him. This establishes the fact that she was surety, as was expressly held in *Loomer* v. *Wheelwright,* (*supra.*) No other proof would be required in any other case, and there is no reason for requiring other proof in favor of the wife. Being a surety, the law presumes that the principal not only agreed to pay the debt, but to indemnify the surety against loss.

Much stress was laid upon the fact that, by the terms of the mortgage, the surplus is to be paid to the husband, after satisfying the mortgage debt, and not to the wife, or to them jointly; and it was claimed that this effectually repels all idea that she was, or intended to be, a surety. I do not consider the wording of this formal part of the mortgage as entitled to any great weight, one way or the other. That direction to the mortgagee, in reference to the surplus, can scarcely be construed into an agreement between husband and wife, by which the latter transfers, or agrees to transfer, her interest to him for the benefit of his creditors generally. The object of the mortgage was to secure the payment of the specific debt, and not to affect the right of the wife beyond that. This exception is not well taken.

The next exception on behalf of the creditors raises the question, whether or not the wife's inchoate right of dower in the husband's land follows the surplus moneys raised by a sale in virtue of the power of sale in the mortgage executed by her with her husband, and should be protected against the claims of the husband's creditors. The referee held that it did, and that one third of the surplus should be invested, and the interest only paid to the creditors during their joint lives.

This follows the decision in *Denton* v. *Nanny,* (8 *Barb.* 618.) Upon this point I shall repose myself upon the authority of that case, which is directly in point. I am moreover satisfied with the learned and able opinion in that case, and am content to adopt it until it shall be reversed or overruled by the court of dernier resort.

The exception taken by Mrs. Underwood, presents a question of more difficulty. It is claimed, in her behalf, that the mortgage debt should be wholly satisfied from the moneys arising

Vartie *v.* Underwood.

from the husband's portion of the premises. This I think is right. The referee reports that the mortgage debt should be satisfied out of the entire fund raised by the sale. Thus the wife is made to pay her portion of the mortgage. In this the referee erred. It is the right of the surety, who has pledged his property with the property of the principal, to have the property of the principal first sold and applied. This principle applies and should govern, in directing payments, after the sale of the property of both. The property or money of the principal is the primary fund, and must first be exhausted. This would leave the money arising from the sale of the wife's share wholly untouched by the mortgage debt. But does it follow that she is entitled to the whole of it, as against the subsequent creditors of the husband? Certainly not. The husband had an interest in her share, which he could lawfully charge or alien without her consent. The estate came to her before 1848, and his interest, to whatever extent it went, had become fixed and vested before the act for the protection of married women was passed. It is not necessary, or pertinent, to determine what would be the rights of the husband, had the property come to her after the acts of 1848 and 1849. Those acts could not affect rights then vested. It does not appear that there is any issue by the marriage. All that appears is that they sustained the relation to each other of husband and wife. The husband is not therefore a tenant by the curtesy of her estate, but the right to the rents, issues and profits, during their joint lives, vested in the husband the moment the estate came to the wife. This is a freehold estate, which he took *jure uxoris*, which he could alien, and which judgment creditors could sell. (2 *Kent*, 130, 133.) By joining in the mortgage, the wife must be taken to have consented to the sale of her portion of the estate and to its being converted into money ; and that portion of the money which represents the vested interest of the husband in the wife's estate must be regarded as his money. Upon what principle can it be claimed to be hers? It is urged that her estate is, by these statutes, exempted at least from the claims of subsequent creditors of the husband. But the difficulty is that this portion

Vartie *v.* Underwood.

of the estate was not in the wife at the date of the passage of these acts. The law had cast it upon the husband as an incident to the marital relation. It was his property, and remained subject to all the incidents of property in his hands, both when these acts were passed and when the mortgage was executed. This property of the husband neither these acts nor any other had exempted from the liens of judgments, or from sale upon executions against him, unless these are to be construed as merely exemption acts, like others of that class. The husband could not be divested of his estate by these acts, which had vested before. And if they were intended to operate to transfer such existing rights from the husband to the wife, to that extent they must, it seems to me, upon well settled principles, be held to be void. I do not doubt that the legislature may pass a valid law, exempting the rents and profits of the wife's real estate from future judgments and executions against the husband. His title would not in such a case be at all impaired, or his right of voluntary alienation affected; and if it be conceded that these creditors could not have proceeded and sold the husband's interest in the land, it does not follow that they cannot reach the same interest where it has been voluntarily converted into money, as other personal estate by him.

I am clearly of opinion that the creditors are entitled to the interest of the money arising from the sale of the one-sixth of seventy-five acres, during the joint lives of the husband and wife, and that the money must be invested and the interest paid over unless the wife shall prefer to take a gross sum; in which case a reference must be had, to ascertain the value of her interest. It is suggested by counsel that the husband has died since the appeal. If such is the fact, the right of the creditors to this portion of the fund is at an end, and upon filing a stipulation admitting such fact, by the counsel for the creditors, the whole of it is to be paid over to her. In other respects the decision at the special term is affirmed.

[MONROE GENERAL TERM, September 4, 1854. *Johnson, Welles* and *T. R. Strong,* Justices.]